# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1672-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

Z.R.,

      Defendant,

and

F.A.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF I.A.R.
and A.R.A.,

      Minors.

_____

Argued October 29, 2019 – Decided November 12, 2019

Before Judges Fisher, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FG-20-0018-18.

Ryan Thomas Clark, Designated Counsel, argued the cause for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Joseph E. Krakora, Public Defender, attorney; Ryan Thomas Clark, on the briefs).

Frank Robinson Moceri, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Frank Robinson Moceri, on the brief).

Todd S. Wilson, Designated Counsel, argued the cause for minors I.A.R. and A.R.A. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Todd S. Wilson, on the brief).

PER CURIAM

In appealing a judgment terminating his parental rights to two daughters – A.R.A. and I.R.A., who were born in 2013 and 2015, respectively – defendant F.A. (Ferdinand, a fictitious name) argues the evidence upon which the judge found all four statutory prongs favored termination was not clear or convincing. He also claims he was denied the effective assistance of trial counsel. We find no merit in these arguments and affirm.

We start our examination of these issues by recognizing that parents have a constitutionally protected right to the care, custody and control of their

children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346-47 (1999). "The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights . . .,' [that are] 'far more precious . . . than property rights.'" Stanley v. Illinois, 405 U.S. 645, 651 (1972) (citations omitted). "[T]he preservation and strengthening of family life is a matter of public concern as being in the interests of the general welfare." N.J.S.A. 30:4C-1(a); see also K.H.O., 161 N.J. at 347.

But the constitutional right to the parental relationship is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To effectuate these concerns, the Legislature created a test for determining when a parent's rights must be terminated in a child's best interests. N.J.S.A. 30:4C-15.1(a) requires that the Division prove by clear and convincing evidence the following four prongs:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to

3

provide a safe and stable home for the child and the delay of permanent placement will add to the harm . . .;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604-11.

The evidence adduced at a two-day trial in November 2018 was largely one-sided. The Division called four witnesses – the children's resource mother, the children's therapist, the Division's expert, and a Division caseworker – and Ferdinand called one, his mother C.C. (Cheryl, a fictitious name), whom he had offered as a potential placement. Ferdinand did not testify.

In determining that the evidence on the first and second prongs favored termination, the trial judge concluded that Ferdinand had "essentially abandoned these two children for more than two years" and that he only very late in the proceedings demonstrated an interest in caring for the children by offering his mother as a resource. The evidence of Ferdinand's disregard for the children's situation over such a lengthy period of time supported the judge's conclusion on these two prongs. Indeed, to appreciate the judge's determination on all four

prongs, it is necessary to examine his findings about the history of the Division's involvement with these parties starting in January 2015, up to the commencement of the guardianship trial in November 2018.

In his findings, the judge recognized that the Division became involved with this family in January 2015 because of a referral concerning substance abuse allegations and domestic violence between Ferdinand and the children's mother, defendant Z.R. (Zooey, a fictitious name). The Division provided services and began supervising the family. A few months later, the Division received another referral that Ferdinand threatened Zooey. When the Division attempted to investigate, it could not locate Ferdinand.

In October 2015, Zooey was living with the children in a shelter. The Division initiated a safety protection plan and sought to assist her in obtaining more suitable living arrangements. At or about this time, Zooey arranged to have a family friend care for the girls. Throughout this time, the Division was unable to make contact with Ferdinand.

In November 2015, Zooey's family friend was unable to continue to care for the girls, Zooey could not secure suitable housing, and the Division could not locate Ferdinand. Consequently, the Division conducted an emergent

removal of the girls on November 2, 2015, and placed them with resource parents, where they remain to this day.

Two days after the emergent removal, the Division located and served Ferdinand with process. Ferdinand, however, did not appear for the initial hearing concerning the removal and never informed the Division that he was available to take the children or otherwise be involved in the children's lives.

In the wake of the emergent removal, the Division continued to seek out Ferdinand. The Division finally determined in October 2016 – nearly a year after the emergent removal – that Ferdinand was in the Union County jail. A Division representative met with him there to ascertain his interest in caring or providing for the children. Ferdinand advised that his mother and sister could possibly help but when the Division asked for information about them, Ferdinand refused to cooperate, stating he preferred speaking with them first.

At a permanency hearing soon thereafter, the Division presented its plan for the termination of both parents' parental rights and for the children's adoption. Ferdinand was transported from the jail for the hearing, at which he did not "give assent to have his mother considered." The judge approved the Division's plan.

A-1672-18T4

Ferdinand was later released from incarceration and the Division held a family team meeting in March 2017 that was attended by both Zooey and Ferdinand. Ferdinand was asked about the availability of his mother and sister as resources; he said he did not want them involved. The Division also made arrangements for supervised visitation and reached out to Ferdinand to ascertain his interest in visitation; he did not respond to the Division's efforts and he did not visit with the children.

At a July 2017 court hearing, Ferdinand was again asked about his interest in caring for the children. He responded that he "did not want to be involved at that time with raising the children" and offered no explanation for his failure to respond to the Division's inquiries between the March 2017 team meeting and the July 2017 hearing.

Ferdinand did not have contact with the Division for the following two months but he did reach out in September 2017 to inform the Division he had no plan for the children and could not care for them; he made no further mention of his mother or sister as a resource.

In October 2017, the Division filed its complaint for the termination of defendants' parental rights so that the girls might be adopted by their resource parents. Ferdinand did not appear at the first conference. In January 2018,

Zooey completed an identified surrender of both girls to their resource parents. With Zooey's assistance, the Division located Ferdinand. A representative discussed with him his ongoing need to complete services and to visit with the children. The Division representative also referred Ferdinand to a substance abuse evaluator and a date was scheduled for an evaluation, but Ferdinand did not appear.

Ferdinand did not appear at a February 2018 status conference. As a result, the court found him in default and determined that a proof hearing would take place on June 20, 2018.

Ferdinand appeared at the proof hearing. It was the first time in six months that Ferdinand had been in touch with either the court or the Division. Ferdinand acknowledged at this hearing that he had not seen the girls in "about four, five years." He offered his mother and sister, who were also present, as resources. The judge properly exercised his discretion in vacating Ferdinand's default, approving Ferdinand's application for representation by the Office of Parental Representation (OPR), and adjourning the trial to a later date. At that time, Ferdinand also offered to surrender his parental rights to his mother, Cheryl. Although she was aware that the children were in placement, Cheryl had made no effort to make herself available to the Division as a possible

resource until that time.[1]  The Division made arrangements so that Ferdinand could have visitation, which he thereafter consistently attended.

The Division scheduled Ferdinand for a substance-abuse evaluation.  The recommendation called for his attendance at an intensive outpatient substance-abuse treatment program at Trinitas Hospital.  But Ferdinand did not attend nor did he participate in any substance-abuse treatment for the following four months.  He did advise the Division that he had scheduled for himself a substance-abuse intake appointment for October 30, 2018 – just weeks prior to the November trial date – at a program of his own choosing.  Upon further inquiry, the Division determined this program did not meet the level of care that had been recommended for Ferdinand.  Despite being informed of the Division's position about this other program and the continuing availability of the Trinitas program, Ferdinand pursued the program of his own choosing.

Based on these facts and circumstances, the judge concluded, as noted above, that Ferdinand had essentially abandoned the children for a lengthy period of time, that Ferdinand had proven time and again an unwillingness to

---

[1]  The Division arranged for an assessment of Cheryl's home and completed background checks on her and other adult members of her household.  No issues arose.  The Division also arranged for Cheryl's visitation of the children; she did not consistently attend.

A-1672-18T4

alleviate the problems even so late as on the eve of trial when he chose not to cooperate with the outpatient program recommended by the Division, that the Division had more than amply provided resources and investigated other alternatives to termination, and that termination would not do more harm than good.

After close examination of the record in light of the issues raised in this appeal, we conclude that the judge's findings were supported by credible and substantial evidence and are deserving of our deference. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012); Cesare v. Cesare, 154 N.J. 394, 413 (1998). We, thus, reject Ferdinand's argument that the judge's decision was against the weight of the evidence or that the evidence was not clear and convincing.

We lastly turn to Ferdinand's argument that he was denied the effective assistance of counsel. To be sure, a parent's right to counsel in a parental termination action is a fundamental right and includes the right not just to any counsel but to effective counsel. N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 305-06 (2007). Importing the Strickland[2] test used in criminal proceedings for these purposes, the B.R. Court held that a parent's

---

[2] Strickland v. Washington, 466 U.S. 668 (1984).

ineffectiveness argument requires consideration of whether counsel's performance fell outside the range of professionally acceptable performance and, if so, whether the defense was thereby prejudiced, i.e., "but for counsel's unprofessional errors, the result of the proceeding would have been different." B.R., 192 N.J. at 307 (quoting Strickland, 466 U.S. at 694).

The Court also recognized the unique time and procedural concerns that arise when an ineffectiveness argument is posed in a parental termination matter. B.R., 192 N.J. at 309 (observing that "[t]he knottiest issue . . . is the practical application of a post-trial remedy, given the time constraints that apply in a parental termination case because of a child's need for permanency"). The Court concluded that the issue should be posed in the direct appeal and that in such a matter appellate counsel "must provide" both "a detailed exposition of how the trial lawyer fell short" and "a statement" explaining "why the result would have been different" but for the lawyer's deficiency. Id. at 311. In fact, the Court was very explicit about how this showing must be presented to an appellate court. The Court held that, in appropriate cases, there must be "an evidentiary proffer" and provided the following example to explain what it meant:

> if the failure to produce [an] expert or lay witness[] is claimed, appellant will be required to supply certifications from such witnesses regarding the

substance of the omitted evidence along with the arguments regarding its relevance.

[Ibid.]

Ferdinand has failed to make this showing in a way that would allow this court to appreciate the substance of the ineffectiveness claim.

To explain, we again note that Ferdinand's trial attorney came into the case at a late stage. That was not counsel's fault. As we have observed, Ferdinand was uninvolved with his children or these proceedings until June 20, 2018, the date scheduled for a proof hearing. He then appeared and for the first time sought to participate. His application for representation by OPR was granted and trial counsel was soon involved on Ferdinand's behalf.

Ferdinand's counsel represented to the trial judge at the pretrial conference on October 31, 2018, that he had sought OPR's authorization for his retention of an expert but the request was denied because Ferdinand was not fully compliant.

On the first day of trial – November 14, 2018 – defense counsel mentioned again the fact that an expert could not be retained on Ferdinand's behalf for the reasons mentioned two weeks earlier and sought an adjournment. It is in this context that defense counsel made the statement that Ferdinand places such great reliance on here: "I haven't done my due diligence in completely preparing a proper defense for my client." Other than this broad statement – which clearly

related only to OPR's decision not to authorize an expert that resulted from Ferdinand's noncompliance[3] – defendant presents little else to support his ineffectiveness claim. In light of the evidence and the circumstances, counsel's inability to present expert testimony favorable to defendant was due to no fault on counsel's part; it was a result of defendant's own noncompliance.

Defendant only adds to this broad claim of a lack of "due diligence" that defense counsel did not cross-examine two of the Division's four witnesses. On this point, our own review of the trial record reveals that defense counsel

---

[3] Immediately prior to the "due diligence" comment, Ferdinand's attorney explained to the trial judge how, at the time of the attorney's appointment, Ferdinand "was not compliant with services" and that was the reason his initial request for an expert was denied by OPR, which also then expressed that "if [Ferdinand] improves his compliance in the case" the decision would be "reconsider[ed]." The attorney then asserted to the trial judge that Ferdinand "has been compliant of late," and, so, he thought it appropriate to ask for an adjournment of the trial

> to allow me to ask the OPR to reconsider their position and then get an expert. Upon review of the Division's expert, . . . it occurred to me that without [an expert], I basically have no . . . ability to properly defend my client. And I haven't done my due diligence in completely preparing a proper defense for my client. So I . . . put on the record the last time we were in court . . . that the OPR had denied . . . my request.

Put in context, it is clear counsel's assertion that he had not "done [his] due diligence" was based only on his inability to secure OPR's authorization to retain an expert.

A-1672-18T4

vigorously cross-examined the Division's expert – perhaps providing the basis for the judge's less than enthusiastic endorsement of that expert's opinions – and the Division caseworker. It is true defense counsel did not cross-examine the resource mother and the children's therapist; that being so, Ferdinand has not explained how cross-examination of those witnesses would have aided his defense, as B.R. requires. No one argued that the resource mother has been in any way inadequate; far from it. So, cross-examination of her could have alienated the factfinder without producing anything useful to the defense. And the therapist was similarly not likely to provide any support for Ferdinand's defense in much the same way. Without further explanation from Ferdinand, we have no cause to assume that the failure to cross-examine these two witnesses fell below professional norms or, if it did, that the result would have been different if counsel launched a vigorous attack on those witnesses.

And we reject Ferdinand's ineffectiveness argument insofar as it focuses on his inability to retain an expert because Ferdinand has not shown how defense counsel's inability to obtain OPR's authorization – a decision based on Ferdinand's conduct, not counsel's – fell below professional norms. Even now – nearly a year later – Ferdinand has not met the bare minimum required by B.R.: the presentation of a certification from the missing expert that would show

14

what Ferdinand might have been able to offer at trial by way of expert testimony had he been given the chance.  So, even if somehow fault can be placed at counsel's doorstep for failing to have an expert available to testify at trial, Ferdinand has not shown how the result reached by the trial judge would have been different.

* * *

To summarize, we reject Ferdinand's argument that the evidence was insufficient to support the trial judge's findings that all four statutory prongs support termination of his parental rights.  And we find no merit in Ferdinand's argument that he was denied the effective assistance of trial counsel.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1672-18T4